```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

LYNN INGLE                    §
                              §
VS.                           §    CIVIL NO.4:10-CV-640-Y
                              § (Criminal No.4:06-CR-119-Y(1))
UNITED STATES OF AMERICA      §
```

## ORDER RESOLVING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255 AND ORDER DENYING CERTIFICATE OF APPEALABILITY

Now pending before the Court is defendant Lynn Ingle's motion for relief under 28 U.S.C. § 2255. Ingle also filed a memorandum in support of her motion and attached to it several exhibit. The government filed a response. Ingle has also filed a reply. After careful consideration and review of defendant Ingle's motion under § 2255 and supporting brief, the government's response, the reply, the file and record of this case, and the applicable law, the Court concludes that Ingle's § 2255 motion must be denied.

Ingle seeks relief under § 2255 on the basis that her court-appointed counsel provided ineffective assistance. Ingle alleges that her counsel was ineffective for failing to (1) properly investigate, analyze, and challenge the loss calculation in the presentence report; (2) sufficiently object to the four-level enhancement under Sentencing Guideline § 3B1.1 for her role as a leader/organizer in the offense; and (3)(a) gather character letters, (b) provide a sentencing memorandum for the Court's consideration, (c) present a sentencing packet, and (d) file a motion for variance.

Ingle pleaded guilty to one count of conspiracy to make false entries to the Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 371.  At the sentencing proceeding, this Court determined that the applicable sentencing guideline range was 57-60 months imprisonment.  After hearing an argument for leniency in the sentence from her counsel, this Court downwardly departed from the guidelines and sentenced Ingle to 42 months in prison and a three-year term of supervised release and ordered her to pay $751,075.12 in restitution.  Ingle did not file an appeal, but she timely filed this motion under § 2255 motion.

The now-familiar, two-pronged standard for review of ineffective-assistance-of-counsel claims was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.[1]

The burden is upon the defendant to show that his counsel's representation fell below an objective standard of reasonableness by identifying acts or omissions of counsel "that are . . . not .

---

[1]*Strickland,* 466 U.S. at 687.

. . . the result of reasonable professional judgment."[2] A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[3] There is a strong presumption that the performance of counsel "falls within the wide range of reasonable professional assistance."[4] A defendant must also affirmatively prove prejudice by showing that a particular error of counsel actually had an adverse effect on the defense, an adverse effect being shown, in turn, by demonstrating a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."[5]

*Loss Calculation*

Ingle's first ground is that counsel failed to properly investigate and challenge the loss calculation in the second addendum to the presentence report. Counsel did challenge, by objection, the initial loss calculation based upon the aggregate total of the thirteen fraudulent loan transactions as totaling $1,285,487.00. (Ingle's Amended Objections to PSR.) As a result of that objection, a second addendum to the presentence report calculated the loss amount as $751,075.12, after reducing the loan amounts by the value of the collateral. Based upon that loss

---

[2] *Id.* at 690.

[3] *Id.*

[4] *United States v. Samuels,* 59 F.3d 526, 529 (5th Cir. 1995); *see also King v. Lynaugh,* 868 F.2d 1400, 1405 (5th Cir.), *cert den'd,* 489 U.S. 1093 (1989).

[5] *Strickland,* at 694 (general discussion at pp. 691-695).

calculation, Ingle's base offense level was increased under sentencing guideline § 2B1.1(b)(1)(H) 14 levels applicable to loss amounts greater than $400,000 but less than $1,000,000. Ingle now argues that the properly calculated loss amount was less than $400,000, that her base offense level should have therefore only been increased 12 levels, and that counsel's failure to assert further objections was ineffective.

In order to support this ground, Ingle contends that expenses incurred by HUD and other victims during the sale of the thirteen foreclosed properties should have been excluded from the loss calculation. Ingle argues that sentencing guideline § 2B1.1, commentary note 3(D)(i) requires the exclusion of sale-related expenses from the calculation of loss. She argues that for each of the thirteen transactions, the loss amount should be only the loan amount less the sales price of the collateral, and under her calculations, the loss amount is only $395,430.00, making her eligible for a two-point reduction in the base offense level.

The commentary relied upon by Ingle, however, does not refer to expenses associated with the sale, but instead excludes from loss "interest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon amount of return or rate of return, or other similar costs."[6] This provision thus excludes from loss the victim's anticipated profit on the loan (interest and agreed upon rate of return) and fees associate with financing the loan

---

[6] U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n. 3D(i)(2009).

4

(late fees and finance charges). But the commentary does not mandate the exclusion of expenses that the victim incurs during the sale of pledged collateral. Rather, another commentary note provides for credit against loss "[i]n a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing."[7] Under this provision, it is logical to include expenses of sale that reduce the amount the victim has recovered. In the majority of the thirteen instances made the basis of the loss calculation, the amount actually recovered was less than the sale price of the collateral due to various expenses incurred by the victim. Accordingly, the loss figure should be calculated by subtracting the net proceeds of sale from the amount of the fraudulently obtained loan.

The government has prepared a chart showing the amount of the disposition-related expenses, such as taxes, maintenance, operation, and sales. (Response, Appendix.) These expenses are deducted from the sales price of the collateral in each instance to determine a net proceeds amount for each sale. The government calculates that deducting the net proceeds of sale from the

---

[7] U.S.S.G. § 2B1.1 cmt n. 3(E)(ii)(2009).

5

thirteen loan amounts[8] results in a revised aggregated loss amount of $501,627.20. (Response, Appendix.)

The government concedes that some interest and loan charges were inappropriately included in the calculation of Ingle's loss amount, resulting in an "overstated" loss amount of $ 751,075.12 in the second addendum to the PSR. (Response at 4.) The government explains that interest and finance charges were sometimes added to the original loan amounts when calculating the outstanding loan balance, and that the loss calculation should have simply used the original loan amounts. (Response at 4.) But the government argues that, although the correct loss amount of $501,627.20 is less than the loss amount used at sentencing, the correct amount is still more than $400,000 and supports the 14-level sentence increase under sentencing guideline § 2B1.1(b)(1)(H). Thus, the government argues, Ingle was not prejudiced by counsel's failure to raise an objection.[9]

The Court agrees. Although the improper interest and finance charges should not have been added to the value of the loan amounts, had counsel raised objections and the Court considered

---

[8] In one transaction, Allison Robinson--property No. 10, the property was not sold, and the government listed the same loss figure of $20,103 sought by Ingle. In another instance, Jodylinda Tubbs--property No. 11, the government reported that expense details were not available, and thus listed the same loss figure of $47,531 sought by Ingle.

[9] Ingle has not in this § 2255 motion sought a reduction in the amount of restitution and thus the Court does not reach that issue. *See generally Campbell v. United States,* 330 Fed. Appx. 482, 483, 2009 WL 1472217, at *1 (5th Cir. May 27, 2009)("A district court lacks jurisdiction to a modify [sic] restitution order under § 2255, a writ of error coram nobis, or 'any other federal law.'")(quoting *United States v. Hatten,* 167 F.3d 884, 887 & nn 3 &6 (5th Cir. 1999)). Nevertheless, the court urges the government and the victims to adjust their restitution expectations accordingly and to pursue an agreement with Ingle.

6

these same arguments, the Court would have made the same determination that the loss figure should be calculated by subtracting the net sales price from the amount of the fraudulently obtained loan. Even if counsel could be said to be deficient for not raising additional challenges to the loss calculation, such objections would not have resulted in a different outcome. The calculation of the applicable sentencing guidelines would have remained the same. As Ingle cannot show the sentence would have been different on a loss amount calculated at $501,627.20, she cannot show prejudice, and the Court concludes that Ingle is not entitled to relief on this first ground.[10]

*Leader/Organizer*

Ingle argues that counsel was deficient for failing to sufficiently object to the finding in the PSR that she was subject to a four-level enhancement under USSG § 3B1.1 for her leader/organizer role in the offense. Counsel raised an objection arguing that the evidence was legally insufficient to establish that Ingle was a leader or organizer of criminal activity that involved more than five or more participants, because she supervised only one person, and others did not even work in the same building with her. But although leader/organizer requires criminal activity that involves five or more participants, it only requires that defendant have been "the organizer, leader, manager,

---

[10] In the alternative, even if a revised loss calculation would have reduced the amount to a total loss calculation less than $400,000 and resulted in a two-level decrease in Ingle's base offense level, Ingle would also not have been prejudiced for the reasons stated in the government's response at pages 5-6.

7

or supervisor of *one* or more other participants."[11] Ingle, acting as the loan officer, originated all of the fraudulently-obtained loans, and instructed her loan processor, Kelly Harper Butts, and co-defendants Anthony Nagle and Angie Metts to falsify documents to obtain loans.(PSR ¶ 49.) The scheme involved more than five participants. (PSR ¶ 49.) Thus, Ingle was properly eligible for a leader/organizer sentence enhancement.

But Ingle argues that counsel should have also argued that co-defendant David Metts played a larger role in the mortgage-fraud scheme. But, even if this is true, the fact that Metts had an active role would not preclude the imposition of a leadership role for Ingle: "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."[12] Thus, even if counsel had raised additional arguments about the role of David Metts, it would not have changed the determination that she was subject to such a four-level enhancement. Counsel's objections were not deficient.[13]

*Character Letters/Sentencing Packet*

Ingle next argues that counsel was ineffective for failing to gather and provide to the Court character letters and a sentencing memorandum arguing for a mitigation of punishment. She provides as exhibits several character letters in which various individuals state that Ingle is a good mother, has a strong family support

---

[11] U.S.S.G. § 3B1.1 cmt n. 2 (2009)(emphasis added).

[12] U.S.S.G. § 3B1.1 cmt n. 4 (2009).

[13] *See generally Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994)("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.")

system, is a good worker, and by the time of sentencing, had started a new career. (Memorandum, Exhibits 17-24.) Ingle supports her argument in this regard with two cases in which the courts found ineffective assistance of counsel premised upon a failure to present character letters.[14] But both of the cited cases based the ineffective assistance determinations upon a finding that there was a reasonable probability that the outcome of the penalty phase would have been different if counsel had presented the available character evidence.[15] Here, there is no evidence that a submission of character letters such as now presented would have altered the already reduced sentence.

At sentencing, this court informed the parties that it was inclined to sentence at the bottom of the applicable guideline range, but asked counsel whether he wished to make any arguments on Ingle's behalf. (February 16, 2010, Sentencing Transcript (Tr.) at 5.) In response, counsel argued for the Court to take into account the mitigating circumstances that Ingle was a single mother and sole care giver of an 18-month-old child, had suffered abuse as a girl, and other various difficulties set forth in the presentence report. Counsel then asked the Court to downwardly depart from the sentencing guideline range. (Tr. 5-7.) After allowing the defendant to speak to the Court, the Court agreed to depart downward from the

---

[14]*Cave v. Singletary,* 971 F.2d 1513, 1519 (11th Cir. 1992); *Martinez-Macias v. Collins,* 810 F. Supp. 782, 787 (W.D.Tex. 1991).

[15]*See Cave,* 912 F.2d at 1519 (reasonable probability that had counsel presented favorable character witness evidence, client would not have received death penalty); *Martinez-Macias,* 810 F. Supp. at 787 (finding that failure to present evidence that defendant faced serious childhood difficulties and overcame them prejudiced defendant's sentencing proceeding).

9

guideline sentence, and imposed a sentence of 42 months. (Tr. 8-9.)

Thus, as a result of counsel's arguments, this Court reduced Ingle's sentence by 15 months. Information in the character letters that Ingle now presents would not have caused this Court to depart to a greater extent. Counsel made arguments for leniency in the sentence similar to those set out in the proposed character letters. Thus, counsel was not deficient for failing to submit the types of character letters and written arguments that Ingle now alleges he should have presented, and the failure to have provided such materials at sentencing did not prejudice her.

*Failure to Seek Variance*

Ingle also claims that counsel should have filed a motion for variance. As noted above, even though counsel did not move for a variance, he did ask for the Court to depart, and as a result of his arguments, obtained a reduction in sentence from 57 months down to 42 months. Thus, counsel was not deficient for failing to file a motion for variance.

For all of the above reasons, Lynn Ingle's motion for relief under 28 U.S.C. § 2255 (docket no. 1) is DENIED.

*Certificate of Appealability*

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.[16] Rule 11 of the Rules Governing Section 2255 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order

---

[16]*See* FED. R. APP. P. 22(b).

adverse to the applicant."[17] The COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."[18] A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."[19]

Upon review and consideration of the record in the above-referenced case as to whether petitioner Ingle has made a showing that reasonable jurists would question this Court's rulings, the Court determines he has not and that a certificate of appealability should not issue for the reasons stated in this order.[20]

Therefore, a certificate of appealability should not issue.

SIGNED June 6, 2011.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[17] RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, RULE 11(a) (December 1, 2009).

[18] 28 U.S.C.A. § 2253(c)(2)(West 2006).

[19] *Miller-El v. Cockrell,* 537 U.S. 322, 326 (2003), *citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

[20] *See* FED. R. APP. P. 22(b); *see also* 28 U.S.C.A. § 2253(c)(2)(West 2006).